Lee Aleyner v. Commissioner.
Aleyner v. Commissioner
Docket No. 22333.
United States Tax Court
1951 Tax Ct. Memo LEXIS 196; 10 T.C.M. (CCH) 562; T.C.M. (RIA) 51179; June 14, 1951
Max K. Ehrlich, Esq., 185 Montague St., Brooklyn, N. Y., for the petitioner. John J. Madden, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: Respondent has determined a deficiency in income tax against petitioner, for the taxable year 1945, in the amount of $12,525.41. Two issues have been raised by petitioner. It is alleged (1) that respondent erred in including in petitioner's gross income bank deposits, amounting to $25,663.60, in accounts in the name of Ann Aleyner, wife of petitioner, and in the name of Midtown Finishing Corporation, a corporation in which petitioner was financially interested, and (2) that respondent erred in disallowing a deduction claimed by petitioner for medical and *197 dental expenses in the amount of $695. Findings of Fact Petitioner is a resident of Brooklyn, New York, and filed his income tax return for the year 1945 with the Collector for the First District of New York. Petitioner's business is finishing and dyeing textiles. During 1945 he was an officer and the owner of 50 per cent of the stock in both Midtown Finishing Corporation and Midtown Dyeing Corporation. Charles Waldorf was the owner of the other 50 per cent. The corporations were organized about 1941 and continued in business until 1947, although one of the corporations was inactive part of that time. In 1945 Midtown Finishing Corporation had bank accounts in The National Safety Bank & Trust Company and petitioner was the only person who had authority to draw checks. A general checking account was maintained through which the company handled the larger accounts of its customers and made the disbursements to its larger creditors. It also kept a "Check Master" account - a special checking account that was on a basis of "pay-as-you-go." This type of account is usually availed of by individuals, rather than corporations. Under it the bank is paid for its services by items, as *198 distinguished from a monthly charge. While this account was used generally by the corporation with respect to its small accounts, both as to deposits and disbursements, petitioner, to a certain extent used it as a personal account. Petitioner maintained no personal checking account in his name at any bank. The transcript of the "Check Master" account shows that the corporation had a balance on December 29, 1944, of $230.99; that the deposits ranged from 5 cents, probably an adjustment by the bank, to $1,500 and totalled $10,627.75 for the year 1945; that many of the deposits were in round figures; that at the end of the year 1945, there was a balance of $239.91, many of the checks having been made payable in round figures. Except for three items of $550, $600, and $1,123.70, respectively, all withdrawals were under $400 each. Respondent included approximately all the deposits in this account in petitioner's gross income. The corporation had no set charge for the services it rendered, for the reason that there were many different grades of goods serviced, and each service entailed a separate charge. Charges ran anywhere from 2 1/2 cents a yard, for finishing, up to 18 cents a yard *199 for dyeing. The goods came in pieces of 80 yards normally, but varied from 70 to 100 yards. Some customers paid their bills at the end of the week, others at the end of the month. Their accounts ranged from $20 to $2,000. Although it had a few large customers, the business depended mostly upon small customers. Petitioner drew a salary in 1944 of about $10,000; in 1946 he drew approximately $9,000; and in his income tax return for 1945 he reported $3,640 as salary from Midtown Dyeing Corporation, 351 Herzel Street, Brooklyn, N. Y. The withholding receipt attached to the return shows the total wages paid amounted to $3,640 and that the employer was Midtown Dyeing Corporation, 35 West 36th Street, New York, N. Y. During 1945 the business was moved from 35 West 36th Street, New York, to 351 Herzel Street, Brooklyn. In November, 1946, petitioner went to California for his health, where he remained for four months. Upon returning to Brooklyn he found that the mortgagee had foreclosed on the $65,000 mortgage that had existed on the plant, that the mortgaged property had been sold and that the purchasers had taken over and were operating the business. The mortgagee and the purchasers knew *200 nothing of the books and records of the business. Petitioner had kept books and records since 1931 in a special room or closet but no books or records of the corporations' businesses for 1945 were available. Petitioner found in a desk or at his home some bank pass books and some miscellaneous checks of his wife. Petitioner and Ann Aleyner were married in 1942 and lived together until 1949, during which year they were separated. During 1945 Ann Aleyner had a checking account, in her name, at the Corn Exchange Bank Trust Company, Prospect Branch, and a savings account in the Bowery Savings Bank. Later, she had a compound interest deposit account, or a savings account, at the Corn Exchange Bank Trust Company. The Bowery savings account was opened by her in February, 1944, with a deposit of $1,120.01. On January 13, 1945, a deposit of $4,876 was made, the only deposit made in the savings account during that year. This sum was included in petitioner's adjusted gross income by respondent. A check for $4,876 was cleared through Ann Aleyner's checking account on January 15, 1945. This account had a balance of over $6,000 at the end of 1944. During 1945 Ann Aleyner made 36 separate deposits *201 in her checking account, totalling $10,437. All the deposits in this account were included in petitioner's gross income by respondent. On 13 of the deposit slips checks in the aggregate amount of $3,860 were deposited and on 26 cash in the aggregate amount of $6,577 was deposited. On August 6 and August 13, 1945, two checks in the respective amounts of $800 and $100, drawn by Midtown Finishing Corporation, were deposited in this account. During the year there were 67 withdrawals from the account, of which 52 were for $100 or less and 15 were for amounts in excess of $100. On occasion, when the business was in need of funds, petitioner would have his wife give a check to the corporation, drawn on her checking account, for the amount needed. Later, after some accounts were collected from customers, the corporation reimbursed Ann Aleyner by check. Petitioner produced 10 checks given by his wife to Midtown Finishing Corporation in the respective accounts and on the respective dates, as follows: January 3, 1944
$ 300
August 12, 1946
5,500
September 4, 1946
3,500
September 10, 1946
2,600
September 19, 1946
3,000
November 14, 1946
2,000
December 9, 1946
2,500
December 23, 1946
2,000
December 31, 1946
1,000
February 6, 1947
1,000
*202 Ann Aleyner, during her marital life with petitioner, earned no income and filed no income tax returns. During 1945 petitioner turned over to his wife most of his salary. In the statement attached to the notice of deficiency respondent gave the following "explanation of adjustments": "(a) It is held that unexplained deposits in bank accounts in your name and in the name of Ann Aleyner, your wife, amounting to $2,663.60, constitute taxable income to you under the provisions of Section 22 (a) of the Internal Revenue Code. "(b) The deduction for medical and dental expenses of $695.00 is disallowed for the reason that the alleged expenditures of $877.00 therefor have not been substantiated and do not exceed 5% of your adjusted gross income of $29,303.60 as provided by Section 23 (x) of the Internal Revenue Code." During 1945 Ann Aleyner advanced to Midtown Finishing Corporation a total of $900 from her checking account and was reimbursed by checks from the corporation. The balance of the deposits in her checking account, in the amount of $9,537 was income of petitioner. Of the deposits made in the "Check Master" account of Midtown *203 Finishing Corporation during the year 1945, $3,000 consisted of petitioner's personal funds. The deposit of $4,876 on January 13, 1945, in Ann Aleyner's savings account, was not income of petitioner in 1945 Petitioner received during the taxable year 1945 gross income in the amount of $16,177. Opinion The parties are in agreement that the amount in controversy, $25,663.60, determined by respondent as additional taxable income to petitioner for the year 1945, was derived from the deposits in the "Check Master" account of Midtown Finishing Corporation and the two accounts of Ann Aleyner. The parties appear to agree, on brief, that this amount consists of the following sums: Ann Aleyner's Accounts -
Savings
$ 4,876.00
Checking
10,527.90
Midtown Finishing Corp.
Check Master Account
10,259.70
$25,663.60
The record shows discrepancies in the aggregate amounts deposited in the checking account of Ann Aleyner and the account of the corporation and an adjustment, based thereupon, shows the following amounts: Ann Aleyner's Accounts -
Savings
$ 4,876.00
Checking
10,437.00
The corporation account
10,350.60
$25,663.60
We need not be *204 too concerned with the discrepancies for we have found that the aggregate amount of deposits in the Ann Aleyner checking account was $10,437 rather than $10,527.90, a difference of $90.90 in favor of petitioner, and we have concluded that most of the deposits are chargeable to petitioner's income for 1945. We have concluded also that a portion of the total deposits in the "Check Master" account of the Midtown Finishing Corporation consisted of personal funds of petitioner, the other deposits being corporate funds. The item of $4,876, deposited in Ann Aleyner's savings account on January 13, 1945, appears to have been drawn from her checking account. The fact that the check for that amount cleared in her checking account two days later, and that there were sufficient funds in the account, carried over from the previous year, to cover the check, convinces us that the deposit of $4,876 was an exchange of that amount from her checking account to her savings account. Whether the $6,000 balance, that really covered the check, was from income of petitioner during 1944 is a question that is not before us. We have found as a fact, and so hold, that the deposit of $4,876 in Ann Aleyner's *205 savings account is not income of petitioner for the year 1945. Respondent determined that all the deposits in the "Check Master" account of the corporation constituted income of petitioner. Petitioner maintains that this bank account was used in the operation of the corporation's business and in particular with respect to the depositing of collections from small customers and the disbursements of its smaller accounts. Petitioner had no individual checking account in his name. He was the only one authorized to draw checks on behalf of the corporation. The "Check Master" account is a special account that is ordinarily used by individuals wherein the bank is paid for its services as it handles each item, withdrawal or deposit, as differentiated from the usual monthly charge for such services. Many of the deposits were made in round figures, which seem unusual, if they consisted of small customers' accounts, as not only did the services rendered by the corporation vary with the customers but the charges were in various amounts, which is obvious when the prices charged ranged from 2 1/2 cents to 18 cents per yard for the different services rendered. Considering all the facts before us *206 and petitioners' failure to show that all the deposits and withdrawals in the account pertained to the corporation's business, we have found as a fact, and so hold, that $3,000 of the deposits are personal funds of petitioner and should be charged to his income for 1945. With respect to his wife's checking account, petitioner has failed to show that most of the deposits therein did not come from his income. He admitted that he turned over to her most of his salary; that she deposited some of it in the bank account; that she took care of her personal wants and their household and other needs out of the money he furnished her; and that at no time during their marital life was she employed or did she file income tax returns or report any income she had earned. Although the account was in his wife's name, it, in fact appears to have been his, as it was subject to his direction. Petitioner contends that he has shown a policy existed whereby an officer of the corporation, in times of need, advanced funds to the corporation, which funds would be returned after collections had been made from some of its customers, and that the deposits in his wife's account were nothing more than deposits *207 of funds withdrawn and advanced to the corporation. While there is some testimony to the effect that such a policy did exist, the burden is on petitioner to show withdrawals from the account were advances to the corporation and the deposits were repayments of such withdrawals. Petitioner produced no records to substantiate the existence of such policy during 1945 or to show definite advances to or definite repayments by the corporation, with the possible exception that two checks were received from the corporation and deposited in the account. On the duplicate deposit slips of August 6 and August 13, 1945, there appear notations that indicate checks of the Midtown Finishing Corporation in the respective amounts of $800 and $100 were parts of the respective deposits. If this reflects the existence and practice of the policy claimed, it also denotes a practice by Ann Aleyner of making a record of deposit slips of checks received from the corporation as repayments of funds advanced. Giving petitioner the benefit of such notations, in connection with his testimony as to the existence of the policy, we are prone to allow the two checks, in the aggregate sum of $900 as repayments of moneys *208 advanced from the account. Because of lack of proof as to the other items in the wife's checking account being definite withdrawals as advances to the corporation and deposits of definite repayments of such withdrawals or advances, we must conclude that the balance of the deposits, in the amount of $9,537, for the year 1945, constituted income of petitioner. As there is nothing in the record to substantiate petitioner's claim of deduction for medical and dental expenses, respondent's denial of the deduction is sustained. Decision will be entered under Rule 50.